1
2
3
4
5
6
7
8
9

IN THE UNITED STATES DISTRICT COURT

10

FOR THE EASTERN DISTRICT OF CALIFORNIA

11 PHILLIP ANGELO TODD,

12          Petitioner,              No. 2:05-cv-0043 MCE JFM (HC)

13      vs.

14 MARK SHEPPARD, Warden,

15          Respondent.              FINDINGS AND RECOMMENDATIONS

16 _____/

17          Petitioner is a state prisoner proceeding in propria persona with an application for

18 a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2001 conviction

19 on charges of assault with a firearm with an enhancement for personal use of a firearm, discharge

20 of a firearm at an inhabited dwelling, discharge of a firearm at an unoccupied vehicle, and felon

21 in possession of a firearm.  The jury also found true that petitioner had previously suffered two

22 prior strike convictions and two five-year priors  within the meaning of Cal. Penal Code

23 § 667(a)(b) through (i).  Petitioner was sentenced to twenty-five years to life on count 1, plus four

24 years for the firearm enhancement and ten years for the two five-year priors.  The sentence on the

25 remaining counts were imposed but stayed pursuant to Cal. Penal Code § 654.  Petitioner raises

26 six claims in his petition that his prison sentence violates the Constitution.

PROCEDURAL HISTORY

Petitioner filed an appeal raising one issue (ground one of the instant petition). (Answer, Exs. B & D.)  On August 26, 2002, the California Court of Appeal, Third Appellate District, affirmed the conviction.  (Answer, Ex. E.)

Petitioner filed a petition for review in the California Supreme Court, which was denied on October 30, 2002.  (Answer, Ex. F.)

On January 29, 2004, petitioner filed a habeas petition in the California Supreme Court, raising the six claims raised in the instant petition.  (Answer, Ex. G.)  On December 1, 2004, the habeas petition was denied.  (Id.)

On January 7, 2005, petitioner filed the instant petition.  (Docket No. 1.) Respondent filed an answer on April 4, 2005.  (Docket No. 10.)  Petitioner filed a traverse[1] on June 27, 2005.  (Docket No. 17.)

FACTS[2]

In statements to police shortly after the crime, several witnesses inculpated [petitioner], identifying him as the one who fired shots. At trial, however, those witnesses gave different versions of the events, generally exculpatory to [petitioner].  Because the jury, given the verdicts, necessarily credited the evidence inculpating [petitioner], [the court] summarize[s] that evidence here.

A dispute arose between [petitioner] and his brother, Harvey "Tuggy" Todd, concerning a pit bull.  [Petitioner] and Lacresia Eagles, [petitioner's] wife, went to a residence to get the dog. When they returned home, Harvey called and told them to come get the dog's leash.  When Eagles arrived to get the leash, Harvey and [petitioner] began to argue over the ownership of the dog.  They tried to fight, but Eagles got between them and

/////

---

[1]  The traverse does not contain pages numbered 48 or 61.  However, pages 47 and 60 appear to be complete, and pages 49 and 62 mark the beginning of new sections.  Thus, the omission of pages 48 and 61 appear to be typographical errors in pagination rather than an omission of text.

[2]  The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Todd, No. C037482 (August 26, 2002), a copy of which is attached as Exhibit E to Respondent's Answer, filed April 4, 2005.

1   prevented it.  Harvey ran over to [petitioner's] car and slashed a
    tire with a knife.

2

3       [Petitioner] drew a handgun and fired several shots at Harvey as
    Harvey ran away.  [Petitioner] chased Harvey between two
    buildings.  Soon, [petitioner] returned to the car and got in as

4   Eagles drove it away, even though one tire was flat.

5       Four nine-millimeter casings were found on the ground where
    [petitioner] fired the shots.  In addition, one of the shots went

6   through the wall of a residence and into a room where a person was
    sleeping.  Another shot hit a car parked in the street.  Gunshot

7   residue was found on [petitioner's] right hand.

8   (People v. Todd, slip op. at 1-2.)

9
                              ANALYSIS

10  I.  Standards for a Writ of Habeas Corpus

11      Federal habeas corpus relief is not available for any claim decided on the merits in

12  state court proceedings unless the state court's adjudication of the claim:

13      (1) resulted in a decision that was contrary to, or involved an
        unreasonable application of, clearly established Federal law, as

14      determined by the Supreme Court of the United States; or

15      (2) resulted in a decision that was based on an unreasonable
        determination of the facts in light of the evidence presented in the

16      State court proceeding.

17  28 U.S.C. § 2254(d).

18      Under section 2254(d)(1), a state court decision is "contrary to" clearly

19  established United States Supreme Court precedents if it applies a rule that contradicts the

20  governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

21  indistinguishable from a decision of the  Supreme Court and nevertheless arrives at different

22  result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406

23  (2000)).

24      Under the  "unreasonable application" clause of section 2254(d)(1), a federal

25  habeas court may grant the writ if the state court identifies the correct governing legal principle

26  from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

                                    3

1   prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ

2   simply because that court concludes in its independent judgment that the relevant state-court

3   decision applied clearly established federal law erroneously or incorrectly.  Rather, that

4   application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75

5   (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

6   question, is left with a 'firm conviction' that the state court was 'erroneous.'")  The court looks

7   to the last reasoned state court decision as the basis for the state court judgment.  Avila v. Galaza,

8   297 F.3d 911, 918 (9th Cir. 2002).

9   II.  Petitioner's Claims

10      A.  First Claim

11          Petitioner's first claim is that his Sixth and Fourteenth Amendment rights were

12   violated by the trial court's erroneous jury instruction on assault.  Petitioner argues that the

13   version of CALJIC 9.00[3] used by the trial court lacked key language about intent.  Petitioner

---

[3]  Petitioner's jury was instructed with CALJIC No. 9.00, as follows:
> Every person who commits an assault upon another person is guilty of a violation of Penal Code section 240, a misdemeanor crime.
>
> In order to prove an assault, each of the following elements must be proved:
> 1.  A person willfully and unlawfully committed an act which by its nature would probably and directly result in the application of physical force on another person; and
> 2.  At the time the act was committed, the person had the present ability to apply physical force to the person of another.
> "Willfully" means that the person committing the act did so intentionally.
>
> To constitute an assault, it is not necessary that any actual injury be inflicted.  However, if an injury is inflicted it may be considered in connection with other evidence in determining whether an assault was committed and, if so, the nature of the assault.
>
> A willful application of physical force upon the person of another is not unlawful when done in lawful self-defense.  The People have the burden to prove that the application of physical force was not in lawful self-defense.  If you have a reasonable doubt that the application of physical force was unlawful, you must find [petitioner] not guilty.

(CT at 202.)

4

contends that the fact that a result is a natural and probable consequence of an intended act is

insufficient to prove the intent element required for assault with a deadly weapon, citing <u>People</u>

<u>v. Smith</u>, 57 Cal.App.4th 1470 (1997).

As both parties point out, as a result of <u>People v. Smith</u>, CALJIC 9.00 was edited

to include a bracketed element between the first and second elements:

> 2. At the time the act was committed the person intended to use physical force upon another person or to do an act that was substantially certain to result in the application of physical force upon another person;

<u>Id.</u>

Respondent notes that the California Supreme Court re-examined the mental state

for assault in <u>People v. Williams</u>, 26 Cal.4th 779 (2001).  As a result of <u>Williams</u>, the second

bracketed element from <u>People v. Smith</u> was deleted and replaced by the following language:

> 2. The person committing the act was aware of facts that would lead a reasonable person to realize that as a direct, natural, and probable result of this act that physical force would be applied to another person;

CALJIC 9.00 (2002 revision).[4]

/////

_____

[4]  In <u>Williams</u>, the California
Supreme Court found former CALJIC No. 9.00 does not properly state the mental element of assault. . . . [I]n addition to commission of an act which by its nature would probably and directly result in the application of physical force on another person, conviction for assault requires that a reasonable person would have known that the act, by its nature, would probably and directly result in the application of physical force on another person.  This standard "does not require a specific intent to cause injury or a subjective awareness of the risk that an injury might occur." (<u>Id.</u> at p. 790.)  The instruction contained in former CALJIC No. 9.00 is problematic . . . because "a jury could conceivably convict a defendant for assault even if he did not actually know the facts sufficient to establish that his act by its nature would probably and directly result in a battery." (<u>Ibid.</u>)  Thus, an instruction concerning assault should inform the jury that assault requires "actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another." (<u>Ibid.</u>)
<u>People v. Todd</u>, slip op. at 3-4.

1          The last reasoned rejection of this claim is the decision of the California Court of

2    Appeal for the Third Appellate District on petitioner's direct appeal.  The state court rejected this

3    claim on the ground that:

> As noted by the Supreme Court, "[T]he instruction at issue in this
> case [is] . . . potentially ambiguous.  Because 'the test of natural
> and probable consequences is an objective one' (*[People v.] Smith*
> [1997] 57 Cal.App.4th [1470,] 1480), merely requiring the jury to
> find that a defendant willfully and unlawfully committed an act
> that by its nature would probably and directly result in physical
> force being applied to the person of another may permit a
> conviction premised on facts [petitioner] *should have known but
> did not actually know*.  Thus, under the instruction given, a jury
> could conceivably convict a defendant for assault even if he did not
> actually know the facts sufficient to establish that his act by its
> nature would probably and directly result in a battery.  [¶]
> Nonetheless, any instructional error is largely technical and is
> unlikely to affect the outcome of most assault cases, because a
> defendant's knowledge of the relevant factual circumstances is
> rarely in dispute" (*People v. Willliams, supra*, 26 Cal.4th at p. 790,
> italics in original.)

> In *Williams*, the court found any ambiguity in former CALJIC
> No. 9.00 was harmless beyond a reasonable doubt.  (26 Cal.4th at
> p. 790.)  There, the defendant "fired a warning shot at [the
> victim's] truck even though he knew that [the victim] was in the
> near vicinity." (*Ibid.*)  The defendant fired a shot into the rear
> passenger side wheel well of the victim's truck, knowing that the
> victim was crouched on the other side of the truck between the cab
> and the rear fender.  The *Williams* court found harmless the error in
> instructing with former CALJIC No. 9.00 because the defendant
> "undoubtedly knew those facts establishing that his act by its
> nature would directly, naturally and probably result in a battery."
> (*Ibid.*)

> The situation here is indistinguishable from *Williams*.  The jury,
> by finding [petitioner] guilty of assault with a firearm under the
> instructions as given, necessarily found [petitioner] willfully and
> unlawfully committed an act that by its nature would probably and
> directly result in a battery.  The only issue left in a prejudice
> analysis is whether he had actual knowledge of the facts
> establishing that his act by its nature would directly, naturally and
> probably result in a battery.  There can be no dispute  [petitioner]
> knew he was shooting a firearm and was aware of the positioning
> of Harvey and residences in the near vicinity when he fired
> multiple shots.  As the Supreme Court found in *Williams*, [the
> court] conclude[s] "any ambiguity in the instruction was harmless
> beyond a reasonable doubt.  (*Neder v. United States* (1999) 527
> U.S. 1, 7-10 [144 L.Ed.2d 35].)"  (26 Cal.4th at p. 790.)

6

[Petitioner] disagrees.  He asserts the evidence established he intended to frighten or harass but not to hit Harvey.  As noted, however, the jury already found [petitioner] committed an act that by its nature would probably and directly result in a battery.  the only mental element not decided was whether [petitioner] had actual knowledge of the facts establishing that his shooting would directly, naturally, and probably result in a battery.  As noted above, it is beyond dispute that  [petitioner] had such knowledge.  Accordingly,  [petitioner's] argument fails.

(People v. Todd, slip op. at 5-7.)

In general, a challenge to jury instructions does not state a federal constitutional claim.  See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  The fact that a jury instruction was inadequate by Ninth Circuit direct appeal standards does not mean that a petitioner who relies on such an inadequacy will be entitled to habeas corpus relief from a state court conviction.  Duckett v. Godinez, 67 F.3d 734, 744 (9th Cir.1995) (citing Estelle, 502 U.S. at 71-72).  In order to warrant federal habeas relief, a challenged jury instruction "cannot be merely 'undesirable, erroneous, or even "universally condemned,"' but must violate some due process right guaranteed by the fourteenth amendment."  Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988) (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)).  To prevail on such a claim petitioner must demonstrate that the "ailing instruction . . . so infected the entire trial that the resulting conviction violates due process.'"  Middleton v. McNeil, 541 U.S. 433, 437 (2004) (quoting Estelle v. McGuire, 502 U.S. 62, 72 (1991)).  In making its determination, this court must evaluate the challenged jury instructions "'in the context of the overall charge to the jury as a component of the entire trial process.'"  Prantil, 843 F. 2d at 317 (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir. 1984)).  See also Middleton, 541 U.S. at 437.

In addition, in evaluating an ambiguous instruction, the inquiry is not how reasonable jurors could or would have understood the instruction as a whole; rather, the court must inquire whether there is a "reasonable likelihood" that the jury has applied the challenged instruction in a way that violates the Constitution.  See Estelle v. McGuire, 502 U.S. at 72 & n.4;

1  Boyde v. California, 494 U.S. 370, 380 (1990); Ficklin v. Hatcher, 177 F.3d 1147, 1150-51 (9th

2  Cir.1999) ("harmless error" when certain that jury did not rely on constitutionally infirm

3  instruction).  Finally, the defined category of infractions that violate fundamental fairness is very

4  narrow:  "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process

5  Clause has limited operation."  Estelle v. McGuire, 502 U.S. at 73.

6          A determination that there is a reasonable likelihood that the jury has applied the

7  challenged instruction in a way that violates the Constitution establishes only that an error has

8  occurred.  See Calderon v. Coleman, 525 U.S. 141, 146 (1998).  If an error is found, the court

9  also must determine that the error had a substantial and injurious effect or influence in

10  determining the jury's verdict, see Brecht v. Abrahamson, 507 U.S. 619, 637 (1993), before

11  granting relief in habeas proceedings.  See Calderon, 525 U.S. at 146.

12          Harmless error analysis applies whether the error is characterized as a

13  misdescription of an element of an offense in a jury instruction, or as an omission of the element.

14  See California v. Roy, 519 U.S. 2, 5 (1996) (omission of "intent" element from aiding and

15  abetting instruction subject to harmless error analysis where jury could have found intent based

16  on evidence it considered); Arreguin v. Prunty, 208 F.3d 835, 837 (9th Cir.2000) (violation of

17  possible state-law-created qualified liberty interest by misdescription or omission of element in

18  special circumstances instruction cured by state appellate court's harmless error analysis; § 2254

19  case); United States v. Lin, 139 F.3d 1303, 1309 (9th Cir.1998) (omission of intent element from

20  charge of making ransom demands harmless error).  The omission will be found harmless unless

21  it " 'had [a] substantial and injurious effect or influence in determining the jury's verdict." '  Roy,

22  519 U.S. at 4 (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)); see Roy v. Gomez, 108

23  F.3d 242, 242 (9th Cir.1997) (on remand after California v. Roy).

24  /////

25  /////

26  /////

8

1        The state court properly found the instant case indistinguishable from People v.

2   Williams.[5]  The record reflects that there was sufficient evidence to demonstrate petitioner was

3   aware of facts establishing his shooting would directly, naturally and probably result in a battery.

4   Petitioner was angry at Harvey (Harvey had just slashed petitioner's car tire) and petitioner stated

5   he was "tired of his shit and wasn't going to take it anymore."  (RT 664, 687-88.)  All the

6   witnesses described petitioner as firing several shots,  shooting "at" Harvey while they were

7   fighting in the street, and chasing Harvey around the Cadillac and through the apartment complex

8   as petitioner fired the weapon at Harvey.  (RT 566, 567, 590, 646, 663, 665, 688-89, 696, 697.)

9   These facts support an inference that petitioner intended to commit a battery, that the weapon did

10  not misfire accidentally, and make clear that petitioner was fully aware of Harvey's presence and

11  intended to commit a battery upon him.  There was no evidence to suggest petitioner did not see

12  Harvey as he repeatedly fired the gun at Harvey.  Rather, petitioner's defense at trial was that

13  there was a third party who was the shooter, not petitioner.

14        Given this evidence, the California Court of Appeal properly applied the harmless

15  error standard of Neder v. United States, 527 U.S. 1, 7-10 (1999) (harmless beyond a reasonable

16  doubt).  In this federal collateral proceeding, however, the harmless error standard is whether the

17  error "'had substantial and injurious effect or influence in determining the jury's verdict.'"

18  California v. Roy, 519 U.S. 2, 4 (1996) (quoting Brecht, 507 U.S. at 637); see Bains v. Cambra,

19  204 F.3d 964, 977 (9th Cir.), cert. denied, 531 U.S. 1037 (2000) (Brecht standard applies

20  uniformly in all federal habeas corpus cases under § 2254).  It may be that the instruction was in

21  error because it did not contain language requiring that the harm be "substantially certain to

22  result," as added by the Court of Appeal of California in Smith, or because it did not include

23  language that the facts giving rise to the probability of application of physical force had to be

24

25        [5]  Indeed, the version of CALJIC 9.00 used in Williams tracks the language of the
    CALJIC 9.00 instruction used here.  Compare Williams, 26 Cal.4th at 783-84, to RT 761-62; CT
26  202.)

1   known to the defendant, as added by the Supreme Court of California in <u>Williams</u> after the

2   conviction in this case was final.  However, on the facts as recited by the court of appeal and

3   quoted above, this court concludes that the error did not have a "substantial and injurious effect

4   or influence in determining the jury's verdict."  Any error was harmless.  Thus, the first claim

5   should be denied.

6        B. <u>Second Claim</u>

7        Petitioner's second claim is that the prosecutor knowingly introduced perjured

8   testimony in violation of his due process rights.  Petitioner argues that the prosecutor should have

9   elicited the truth to find out whether the defense witnesses or prosecution witnesses were lying,

10   rather than allowing all of the witnesses to testify.  Petitioner contends the police officers

11   falsified their reports and that he was convicted by this false evidence.  Moreover, petitioner

12   argues that where the police reports attribute statements from witnesses that appear inconsistent

13   from their trial testimony, the conviction must be vacated and the case remanded to the state

14   courts for witness credibility and prejudice determinations.  <u>Giles v. Maryland</u>, 286 U.S. 66, 87

15   S.Ct. 793 (1967).

16        Respondent counters that petitioner has failed to demonstrate that the prosecution

17   used evidence he knew to be false to obtain petitioner's conviction.  In addition, the prosecution

18   did not keep any evidence from the jury; rather, he submitted all the evidence to the jury as

19   required.

20        There is no reasoned state court opinion addressing this claim.

21        "[A] conviction obtained by the knowing use of perjured testimony is

22   fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false

23   testimony could have affected the judgment of the jury."  <u>United States v. Agurs</u>, 427 U.S. 97,

24   103 (1976).  The same result obtains when the prosecutor, although not soliciting false testimony,

25   allows it to go uncorrected when it appears.  <u>See Napue v. Illinois</u>, 360 U.S. 264, 269 (1959);

26   /////

see also <u>United States v. LaPage</u>, 231 F.3d 488, 492 (9th Cir.2000) (if prosecutor knows that his witness has lied, he has a constitutional duty to correct the false impression of the facts).

"It is an established tenet of the due process clause that 'the deliberate deception of the court by the presentation of false evidence is incompatible with the rudimentary demands of justice.'" <u>United States v. Rewald</u>, 889 F.2d 836, 860 (9th Cir. 1989) (quoting <u>United States v. Endicott</u>, 869 F.2d 452, 455 (9th Cir. 1989)). <u>See also</u> <u>Morales v. Woodford</u>, 388 F.3d 1158, 1179 (9th Cir. 2004). "[A] conviction obtained by the knowing use of perjured testimony must be set aside if there is any reasonable likelihood that the false testimony could have affected the jury's verdict." <u>United States v. Bagley</u>, 473 U.S. 667, 680 n.9 (1985). <u>See also</u> <u>Belmontes v. Woodford</u>, 350 F. 3d 861, 881 (9th Cir. 2003); <u>Ortiz v. Stewart</u>, 149 F.3d 923, 936 (9th Cir. 1998) ("If a prosecutor knowingly uses perjured testimony or knowingly fails to disclose that testimony is false, the conviction must be set aside if there is any reasonable likelihood that the false testimony could have affected the jury verdict.").

There are two components to establishing a claim for relief based on the introduction of perjured testimony at trial. First, the petitioner must establish that the statements were false. <u>United States v. Polizzi</u>, 801 F.2d 1543, 1549-50 (9th Cir. 1986). Second, the petitioner must demonstrate that the prosecution knowingly used the perjured testimony. <u>Id.</u>; <u>see also</u> <u>Morales</u>, 388 F. 3d at 1180. Mere speculation regarding these factors is insufficient to meet petitioner's burden. <u>United States v. Aichele</u>, 941 F.2d 761, 766 (9th Cir. 1991). <u>See</u> <u>Marcella v. United States</u>, 344 F.2d 876, 880 (9th Cir. 1965) ("Before a sentence may be vacated on the ground of perjured testimony, the movant must show that the testimony was perjured and that the prosecuting officials knew at the time such testimony was used that it was perjured.")

1    Unlike in Napue[6] or Giles,[7] the prosecutor here did not withhold any evidence

2  from the jury.  Rather, the police officers testified as to the contents of their police reports, which

3  contained statements by witnesses inculpating petitioner.  These statements were given shortly

4  after the crime took place.  At trial, the witnesses testified they denied they had seen petitioner

5  firing the shots.  Thus, all of the conflicting evidence was submitted to the jury for the jury to

6  determine the witnesses' credibility.  See Imbler v. Pachtman, 424 U.S. 409, 426 n.24

7  (1976)(where there is a sharp conflict in evidence, the prosecution may permit the jury to resolve

8  the conflict).  Petitioner has provided no evidence that the police officers falsified their reports,[8]

9  or that the prosecution was aware that the police officers had falsified their reports.  Rather,

10  petitioner merely argues the officers falsified their reports and defense witnesses testified

11  truthfully.  These unsupported statements are insufficient to demonstrate that the police officers

12  falsified their reports.  Petitioner has also failed to demonstrate that the prosecution knew the

13  police officers falsified their reports.

14    Moreover, the jury was properly instructed on how to evaluate inconsistent

15  statements (CT 186), the believability of witnesses (CT 187), discrepancies in testimony (CT

16  188), as well as testimony they believe is willfully false (CT 189).

17  /////

18

19    [6] In Napue, the prosecution's principal witness testified he had received no promise of
consideration in return for his testimony, when, in fact, the prosecutor had promised him

20  consideration.  The prosecutor did nothing to correct the false testimony of this witness.  Id., 360
U.S. at 265, 269.

21    [7] In Giles, the court held that remand was required to determine whether police reports
that had not been disclosed to the defense contained information necessitating a new trial.  Id.

22

23    [8] Petitioner also contends that the crime scene investigator, Kathleen Modeste, falsified
the gun residue test results to procure a false conviction.  During trial, Ms. Modeste testified that

24  she cut the envelope open that contained the test results so the envelope could be "unsealed for
court."  (RT 479-83, 486).  Petitioner contends this was a violation of the chain of custody as it

25  was to remain sealed until opened in front of the entire courtroom.  However, petitioner has
failed to show how prematurely opening the envelope that contained the test results demonstrates

26  that the investigator falsified the gun residue test results.  This claim appears to be based on mere
speculation and should be dismissed.

Petitioner has failed to demonstrate either that the statements contained within the police reports were false or that the prosecution knowingly used perjured testimony.  Thus, this claim must also fail.

C.  Third Claim

Petitioner's third claim is that testimony was introduced at trial from witnesses who did not appear at trial, in violation of the Confrontation Clause.  Petitioner challenges the admission of evidence through the testimony of two police officers.

First, Police Officer Charles Husted testified, on cross-examination, that when he arrived on the scene he was flagged down by a Caucasian, female adult who told him "he went that way," and pointed to a direction someone had gone.  (RT 571.)  Husted saw someone running down the alley, but did not pursue him.  (RT 572.)  Husted was unable to locate the female witness who flagged him down.  (RT 572.)

Second, Officer Robert Macias testified that he found four nine-millimeter casings at the scene, some of which were on the ground near a parked gray Cadillac.  (RT 593-94, 608-09.)  One of the shells was given to Macias by an unidentified man.  (RT 595-96.)  The unidentified man showed Macias damage outside and inside his apartment, consistent with the trajectory of a bullet, and pointed to a location on top of his kitchen table indicating that was where he had retrieved the shell casing.  (RT 596-601.)  The unidentified man did not give Macias his name.  (RT 600.)

Petitioner contends the officers' testimony relating information from these two unidentified witnesses violated the Confrontation Clause, citing Barber v. Page, 390 U.S. 719 (1968).

There is no reasoned opinion from a state court rejecting this claim.

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ."  U.S. Const. amend. VI.  This right, extended to the States by the Fourteenth

Amendment, includes the right to cross-examine witnesses.  Cruz v. New York, 481 U.S. 186, 189 (1987) (citing Pointer v. Texas, 380 U.S. 400, 404 (1965)).  "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." Lilly v. Virginia, 527 U.S. 116, 124 (1999) (quoting Maryland v. Craig, 497 U.S. 836, 845 (1990)).  See also Davis v Alaska, 415 U.S. 308, 315 (1974) (a primary interest secured by the Confrontation Clause is the right of cross-examination).  However, an unavailable witness's out-of-court statement may be admitted against a criminal defendant and not run afoul of the Confrontation Clause so long as it bears adequate indicia of reliability – i.e., falls within a "firmly rooted hearsay exception" or otherwise bears "particularized guarantees of trustworthiness" such that adversarial testing would be expected to add little, if anything, to the statement's reliability.  Ohio v. Roberts, 448 U.S. 56, 66 (1980); Lilly, 527 U.S. at 124-25. Whether a statement bears "particularized guarantees of trustworthiness" must be shown from the totality of the circumstances surrounding the making of the statement, not from the trial evidence as a whole.  Idaho v. Wright, 497 U.S. 805, 819 (1990).  Petitioner's Confrontation Clause claim is governed by these standards.[9]  See Winzer v. Hall, 494 F.3d 1192, 1196-98 (9th

---

[9]  In 2004, the United States Supreme Court held that the Confrontation Clause bars the state from introducing into evidence out-of-court statements which are testimonial in nature unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable.  Crawford v. Washington, 541 U.S. 36 (2004).  However, for purposes of the AEDPA, this court must look to federal law as it existed at the time of the state court decision in determining whether the petition should be granted.  Williams v. Taylor, 529 U.S. 362, 412 (2000); Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).  The holding in Crawford is not retroactive to cases on collateral review. Whorton v. Bockting, ___ U.S. ___, 127 S. Ct. 1173, 1184 (2007).  Therefore, the decision in Crawford does not apply because it was decided after petitioner's trial and appeal.  Winzer v. Hall, 494 F.3d 1192, 1194 (9th Cir. 2007).  In addition, in Davis v. Washington, ___ U.S. ___, 126 S. Ct. 2266 (2006), the United States Supreme Court elaborated on the holding in Crawford, exploring the parameters of statements which were "testimonial" in nature.  In that case, which involved a call to a 911 operator during an ongoing emergency, the Supreme Court held that statements are non-testimonial (and therefore not subject to the requirements set forth in Crawford) "when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency" but are testimonial "when the circumstances objectively indicate that there

1  Cir. 2007) (applying these standards); <u>Bolton v. Knowles</u>, No. 05-15966, 2007 WL 793200, *1

2  (9th Cir. Mar. 15, 2007) (concluding that where habeas petitioner's direct review became final

3  prior to the decision in <u>Crawford</u>, his Confrontation Clause claim was governed by the standards

4  set forth in <u>Ohio v. Roberts</u>).[10]

5          First, petitioner affirmatively elicited Husted's testimony during cross-

6  examination.  Second, the female's statement was not testimonial, but rather an excited utterance

7  made during the criminal activity at issue here; thus, the Confrontation Clause is not implicated.

8  But even if it applied to non-testimonial statements, it fell within a recognized exception to the

9  hearsay rule.

10         The United States Supreme Court has held that "hearsay statements characterized

11  as 'excited utterances' or 'spontaneous declarations' are 'firmly rooted' exceptions to hearsay."

12  <u>Winzer</u>, 494 F.3d at 1197 (citing <u>Wright</u>, 497 U.S. at 820 and <u>White v. Illinois</u>, 502 U.S. 346,

13  355-56 (1992)).  A spontaneous declaration is "[a] statement that has been offered in a moment

14  of excitement--without the opportunity to reflect on the consequences of one's exclamation."

15  <u>White</u>, 502 U.S. at 356.  On the other hand, a statement made "after the declarant has had an

16  opportunity to reflect or discuss the matter with others" is not considered a spontaneous

17  declaration.  <u>Wright</u>, 497 U.S. at 820.  Here, the white female's statement falls within the excited

18  utterance exception to hearsay, because she uttered it while flagging down the police car in the

19  /////

20

---

21  is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or
    prove past events potentially relevant to later criminal prosecution."  <u>Id.</u> at 2273-74.  <u>Davis v.</u>

22  <u>Washington</u> was decided after <u>Crawford</u> and is therefore also not applicable to resolution of the
    instant case, which must be decided on the basis of the law as it existed at the time petitioner's

23  conviction became final.  <u>See Davis v. Runnels</u>, No. C 02-0538 PJH, 2007 WL 2221068 at *16
    n.4 (N.D. Cal. Aug. 2, 2007) (concluding that because <u>Davis</u> was decided after <u>Crawford</u>, it was

24  not applicable to a pre-Crawford habeas petition).  Accordingly, this court will not rely on the
    decisions in <u>Crawford v. Washington</u> or <u>Davis v. Washington</u> in analyzing petitioner's claims.

25

26      [10]  Citation of this unpublished disposition by the Ninth Circuit Court of Appeals is
    appropriate pursuant to Fed. R. App. P. 32.1 and U.S. Ct. of App. 9th Cir. Rule 36-3(b).

1    midst of the underlying criminal activity.  Thus, her statement was properly admitted into

2    evidence at petitioner's trial.[11]

3            Petitioner's claim with regard to the unidentified man who explained the bullet

4    trajectory and pointed out the location of the shell casing on the kitchen counter is equally

5    unavailing.  As noted by respondent, the address of this individual was known to petitioner and

6    revealed at trial; unlike the witness in <u>Barber</u>,[12] there was no apparent difficulty in obtaining his

7    presence at trial.  Petitioner's trial counsel could have subpoenaed this witness for cross-

8    examination.

9            But even if it was error, it was harmless.  The testimony of this unidentified man

10   did not identify the shooter, and the parties stipulated that law enforcement was unable to lift any

11   latent prints from the shell casings.  (RT 638.)  Arguably, this testimony slightly reinforced that

12   the shooter intended to shoot the victim, but because several witnesses identified petitioner as the

13   shooter, as the person who chased the victim around the Cadillac and through the apartment

14   complex while shooting the weapon, and as the person who was angry because the victim had

15   slashed the tire of his Cadillac, this court cannot find that the admission of the unidentified man's

16   statements had a substantial  and injurious effect or influence in determining the jury's verdict.

17   Petitioner's third claim for relief should be denied.

18   /////

19

20           [11]  The admission of this evidence would also be harmless error.  Although the female
     directed Husted to someone running down the alley, petitioner was not apprehended in the alley.
21   He was arrested during a vehicle stop.  (RT 508-09.)  The officer who detained the vehicle had
     received a dispatch to Caselli Circle and informed a blue vehicle was involved in a shooting.
22   (RT 509.)  Petitioner was in the passenger seat of the blue car coming toward the officer as he
     approached the scene.  (RT 511-12.)  After investigation and several field show-up
23   identifications, petitioner was arrested.  (RT 528, 612.)  Thus, the female's statement that "he
     went that way" and pointing up the alley was only marginally relevant to petitioner's guilt.

24

25           [12]  Indeed, <u>Barber</u> is inapposite.  In <u>Barber</u>, the prosecution made no effort to produce a
     principal eyewitness, who gave testimony incriminating Barber.  <u>Id.</u>  Here, neither unidentified
26   witness was a principal eyewitness and each of their testimony did not specifically incriminate
     petitioner.

1    D.  Fourth Claim

2            Petitioner's fourth claim is that he suffered ineffective assistance of counsel in

3    violation of the Sixth Amendment based on counsel's failure to obtain an expert to examine the

4    prosecution's gunshot residue results.  Petitioner reiterates his belief that the prosecution falsified

5    the test results to obtain a false conviction, and argues that if defense counsel had hired an expert

6    to perform an independent test, the false test results would have been detected.

7            Respondent contends petitioner has failed to offer any foundation in support of

8    this claim and thus the state court could have reasonably concluded that (1) counsel did hire an

9    expert and chose not to call the expert as a witness at trial because the testing results were

10   identical to the prosecution's results; or (2) counsel did not retain an expert because petitioner

11   had admitted he was the shooter of the firearm.

12           There is no reasoned state court opinion addressing this claim.

13           In order to prevail on his claims of ineffective assistance of counsel, petitioner

14   must show two things, unreasonable errors and prejudice flowing from those errors.  First

15   petitioner must show that, considering all the circumstances, counsel's performance fell below an

16   objective standard of reasonableness.  Strickland v. Washington, 466 U.S. 688 (1984).  The court

17   must determine whether in light of all the circumstances, the identified acts or omissions were

18   outside the wide range of professional competent assistance.  Id. at 690.  "Review of counsel's

19   performance is highly deferential and there is a strong presumption that counsel's conduct fell

20   within the wide range of reasonable representation."  United States v. Ferreira-Alameda, 815

21   F.2d 1251 (9th Cir. 1986).

22           Second, petitioner must prove prejudice.  Strickland at 693.  To demonstrate

23   prejudice, petitioner must show that "there is a reasonable probability that, but for counsel's

24   unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A

25   reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.

26   The focus of the prejudice analysis is on "whether counsel's deficient performance renders the

17

1   result of the trial unreliable or the proceeding fundamentally unfair." <u>Lockhart v. Fretwell</u>, 506

2   U.S. 364, 372 (1993).

3          Petitioner has provided no evidence in support of this claim.  Rather, petitioner

4   cites to the record where trial counsel stated he intended to hire an expert and test the sample.

5   (RT 64.)  Petitioner now claims that trial counsel failed to do so, but petitioner has not presented

6   a declaration from counsel attesting to this failure.  Petitioner has not explained how he knows

7   trial counsel failed to hire an expert and test the gunshot residue.  Petitioner must provide

8   competent evidence to support his claims.  <u>See</u> <u>Williams v. Woodford</u>, 384 F.3d 567, 588 (9th

9   Cir. 2004)(conclusory allegations that are unsworn or unsupported by an proof or offer of proof

10  do not provide an adequate basis to obtain relief).  Petitioner has also failed to demonstrate what

11  an expert, if obtained, would have proffered.  Thus, petitioner's fourth claim for relief should be

12  denied.

13        E.  Fifth Claim

14          Petitioner's fifth claim is that the judge who revoked his bail, presided over his

15  preliminary hearing, and bound him over to superior court to stand trial, also served on

16  petitioner's jury, constituting reversible error.

17          Respondent contends the record reflects the judge was never a member of

18  petitioner's jury.

19          There is no reasoned state court opinion addressing this claim.

20          The record reflects that early in voir dire, prior to either attorney exercising any

21  peremptory challenges, and prior to the jury panel being sworn, the following exchange took

22  place on November 13, 2000:

23              THE COURT:  We are meeting out of the presence of the jury.  We
                have Juror Number 13 here, who is Judge Michael Ullman.  I
24              didn't want to – Counsel, we are short of judges, obviously.  We
                have a number of vacancies here.  I didn't want to bring Judge
25              Ullman in just to sit and listen to all of this if you are going to
                stipulate to excuse him, or if . . . one of you want to excuse him.

26  /////

1       DEFENSE COUNSEL:  We are in agreement we can stipulate he can be released.

2

3       PROSECUTOR:  With reluctance, your Honor.  We would like to keep him, but –

4       THE COURT:  Well, do you agree with the stipulation?

5       PROSECUTOR:  I'll agree to this.

6       THE COURT:  We'll go ahead and excuse you.  Thank you very much, sir.

7

      (Prospective Juror Ullman left courtroom)

8

9 (Reporter's Augmented Transcript on Appeal ("RATA" at 23.)

10       Voir dire continued.  (RATA 24-155.)  On November 14, 2000, the selected jury

11 panel was sworn to hear the case.  (RATA 156.)

12       On November 16, 2000, the court recessed during the testimony of Sacramento

13 Police Department Crime Scene Investigator Kathleen Modeste (during the prosecution's case).

14 (RT 492.)  The jury was excused, and the following exchange occurred:

15       PROSECUTOR:  Also, for the record even though both counsel stipulated to excusing Mike Ullman, Judge Mike Ullman from . . .

16 the panel, I also discovered, and want to put on the record at this time he would be disqualified as a juror in this case because he was

17 the magistrate that heard the preliminary hearing in this case.  I want to put that on the record.

18

      THE COURT:  It's kind of late to tell us now.

19

      PROSECUTOR:  I just discovered that.

20

21       THE COURT:  He knows a little bit about the facts.  How many witnesses did you put on at prelim?

22       PROSECUTOR:  Four.

23       THE COURT:  He's already passed judgment on this.  There's been enough judgment that a reasonable man could suspect this

24 defendant.  I don't think he would be eligible to sit.  All right.

25 (RT 492-93.)

26 /////

1    As noted above, the record makes clear that Judge Ullman was not selected to

2 serve on petitioner's jury.  Rather, Judge Ullman was excused before the jury panel was selected

3 and sworn to serve as jury in petitioner's case.  Thus, petitioner's fifth claim for relief has no

4 merit and should be denied.

5    F.  Sixth Claim

6    Petitioner's sixth claim is that his appellate counsel was ineffective for failing to

7 raise claims two through five on direct appeal.  Petitioner contends that had appellate counsel

8 raised those claims on direct appeal, his conviction would have been reversed or he would have

9 been granted a new trial.

10    Respondent argues that petitioner has failed to meet both prongs of Strickland,

11 466 U.S. at 668, and has failed to demonstrate that the state court's rejection of this claim was

12 contrary to, or an unreasonable application of, controlling principles of United States Supreme

13 Court precedent.

14    There is no reasoned state court opinion addressing this claim.

15    The Supreme Court has applied the above Strickland standards to ineffective

16 assistance of appellate counsel claims as well.  See Smith v. Robbins, 528 U.S. 259 (2000)

17 (holding, *inter alia*, that proper standard for evaluating petitioner's claim that appellate counsel

18 was ineffective in neglecting to file a merits brief is that enunciated in Strickland); Jones v.

19 Barnes, 463 U.S. 745 (1983) (holding that defense counsel appointed to prosecute appeal does

20 not have constitutional duty to raise every nonfrivolous issue requested by defendant).  Thus,

21 petitioner must show that appellate counsel's act or omission fell outside the wide range of

22 professional competent assistance.  Petitioner must then demonstrate that there is a reasonable

23 probability that, but for appellate counsel's unprofessional errors, the outcome of the appeal

24 would have been different, i.e. that there was a reasonable probability the appeals court would

25 have reversed the lower court's decision.

26 /////

1          Petitioner's argument that failure to raise claims two through five on direct appeal

2    combine to constitute ineffective assistance of appellate counsel is unavailing.  Although

3    appellate counsel must defend petitioner's rights, counsel is not required to argue every claim

4    petitioner poses.  See Jones v. Barnes, 463 U.S. 745, 751-54 (1983) (holding that an attorney

5    need not advance every colorable argument on appeal).  Appellate counsel's failure to raise the

6    above claims, given the record as a whole, does not meet both prongs of Strickland.  Thus,

7    petitioner's claims of ineffective assistance of appellate counsel must also fail.  Petitioner's sixth

8    claim for relief should be denied.

9          For the foregoing reason, IT IS HEREBY RECOMMENDED that petitioner's

10   application for a writ of habeas corpus be denied.

11         These findings and recommendations are submitted to the United States District

12   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

13   days after being served with these findings and recommendations, any party may file written

14   objections with the court and serve a copy on all parties.  Such a document should be captioned

15   "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that

16   failure to file objections within the specified time may waive the right to appeal the District

17   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

18   DATED:  February 25, 2009.

19

20                                        UNITED STATES MAGISTRATE JUDGE

21

22   001; todd0043.157

23

24

25

26